**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ADAM NAHAS,<br><br>Plaintiff,<br><br>v.<br>ARTISAN ALLEY LTD.,<br>JUSTIN COX,<br>AMBER ROBINSON,<br>CASEY RICH,<br><br>Defendants. | ) | No. 1:23-cv-01651-TWP-KMB |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT, *SUA SPONTE* GRANTING SUMMARY JUDGMENT AS TO FLSA CLAIM, AND RELINQUISHING SUPPLEMENTAL JURISDICTION**

This matter is before the Court on Plaintiff Adam Nahas's ("Nahas") Motion for Summary Judgment (Filing No. 68) and Defendants Justin Cox ("Cox"), Amber Robinson ("Robinson"), and Casey Rich's ("Rich") (collectively, the "Individual Defendants") Cross-Motion for Summary Judgment (Filing No. 71). Nahas brings claims against the Individual Defendants and Defendant Artisan Alley, Ltd. ("Artisan Alley"), for violation of the Fair Labor Standards Act ("FLSA"), and against solely Artisan Alley for breach of contract, violation of the Indiana Wage Payment Statute, and violation of the Indiana Wage Claims Statute. The cross-motions for summary judgment concern only the FLSA claim. For the reasons explained below, the Individual Defendants' Motion for Summary Judgment is **granted**, Nahas's Motion for Summary Judgment is **denied**, and the Court ***sua sponte*** **grants** summary judgment for Artisan Alley on the FLSA claim and **relinquishes supplemental jurisdiction** over the remaining state law claims against Artisan Alley.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the non-moving party for each respective motion. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). These background facts do not provide a comprehensive explanation of all the facts presented in this case; instead, they provide the background relevant to the issues before the Court.

### A. Factual Background

In 2017, Nahas founded Artisan Alley, a nonprofit business located in Bloomington, Indiana, and he served as the executive director of Artisan Alley (Filing No. 1-3 ¶ 4; Filing No. 73-1 at 19:11–19). Artisan Alley was a membership organization designed to create a space in the Bloomington community for artists to collaborate and cooperate in support of the arts. *Id.* at 148:12–149:9; (Filing No. 73-1 at 11:8–23). It provided services to its members, including providing dedicated studio space (Filing No. 73-1 at 11:24–13:5, 73:6–18). Artisan Alley's primary income was membership based, including resident membership and co-work membership payments. *Id.* at 231:3–232:2. All studio rentals, classes, and physical transactions executed by the members occurred in Bloomington. *Id.* at 11:8–17:25. Because Indiana University is located in Bloomington, people from all over the world live there (Filing No. 73-6 at 149:19–150:3).

Nahas did not have a formal job description, and his role encompassed a number of different duties. *Id.* at 64:17–65:2. As executive director, he provided janitorial and maintenance work, dealt with member relations, and facilitated arts programing and classroom rentals, among other things. *Id.* at 65:3–66:5. Nahas also oversaw the company's social media and website, which sold day passes, classes, and goods. *Id.* at 84:19–85:10, 230:16–235:21. He spent approximately

two to eight hours per week on this work from 2020 through 2022. *Id.* at 84:19–85:10. Artisan Alley used PayPal, Cash App, Venmo, and Stripe for its digital payment processing, along with accepting cash and checks. *Id.* at 233:5–235:23. Nahas used Facebook and Patronicity to fund public artworks and different educational initiatives, including classes, programs, and projects in the local community. *Id.* at 95:14–96:15.

In addition to raising funds for Artisan Alley through crowdfunding, Nahas also applied for and received grants and a Small Business Association loan. *Id.* at 66:6–9; 167:15–168:14. One of its grants was a Digital Equity Grant that Artisan Alley received from the City of Bloomington in 2020, 2021, and 2022. *Id.* at 97:11–98:10. Nahas emailed out-of-state grant writers, including one in Chicago and another in Texas. *Id.* at 240:6–19. He also corresponded with out-of-state vendors, donors, and prospective members. *Id.* at 240:6–19. Nahas also dealt with customers and visitors, ten percent of which he estimates were from out of town, out of state, or out of the country. *Id.* at 228:2–17. Nahas mailed items out of Indiana "maybe 5, 10 times a year." *Id.* at 238:5–240:1. He cites one item he sent to Chicago and another that he took to Louisville. *Id.*

Cox, Robinson, and Rich were unpaid volunteer members of the board of Artisan Alley (the "Board") (Filing No. 73-4 at 14:16–15:1; Filing No. 73-5 at 5:23–6:8; Filing No. 73-6 at 58:8–12). The Board's composition changed throughout the relevant time period (Filing No. 73-1 at 51:2–58:4). Cox served on the Board during all relevant times—from mid-2017 until 2023 (Filing No. 70-2 at 9:2–8, 58:8–12). Robinson served on the Board from 2017 to 2019, from approximately April 2022 to April 2023, and again in the fall of 2023 (Filing No. 73-4 at 14:16–15:1). Rich served on the board from approximately August 2022 to March 2023 (Filing No. 70-4 at 5:23–6:8).

The Board had authority over several aspects of the business, including authority to change or direct aspects of Nahas's work and compensation (Filing No. 70-3 at 61:6–64:21). The Board was capable of imposing a policy requiring Nahas to track his hours, but it never asked Nahas to do so (Filing No. 70-4 at 61:18–62:7). The Board was the entity with direct oversight over Nahas in his role as executive director, though Nahas did not have a direct supervisor. *Id.* at 55:4–56:10; (Filing No. 73-1 at 108:1–3). Because there was no direct supervisor, Nahas set his own hours, personally wrote and signed some of his own checks, and served as his own interim treasurer (Filing No. 73-1 at 136:21–137:18, 139:25–140:8; Filing No. 73-4 at 62:2–8; Filing No. 73-7 at 36).

Throughout their tenures as Board members, the Individual Defendants met and communicated with Nahas, though the parties debate the frequency of the meetings and the degree of involvement that the Individual Defendants had (Filing No. 73-1 at 173:11–174:8, 183:8–189:9, 251:15–18; Filing No. 79 at 6–7, 9). None of the Individual Defendants served as the Board Treasurer (Filing No. 73-1 at 155:12–156:1).

On November 1, 2017, Cox and Nahas signed an employment agreement, which provides $23,660.00 per year as "full compensation for all services provided" beginning November 1, 2017, subject to normal payroll deductions (Filing No. 70-5). It also calls for an annual review and a policy beginning in 2018 to increase compensation over two years to $50,000.00 annually. *Id.* Nahas was aware that Artisan Alley did not have funds to pay him in November 2017. He testified that there was a discussion with the Board "where they were concerned about having the funds to pay [Nahas] because not everything had been transitioned between the contracts and the leases even though there was a bank account and some money was starting to come in," and that "there was a conversation to defer that until . . . the nonprofit status had actually come through." (Filing

No. 70-1 at 120:16–25). However, no such written policy was implemented. *Id.* at 119:9–19, 124:2–18.

In 2022, Nahas raised issues related to his compensation to the Board. *Id.* at 197:9–201:11. He asserted that he was due back wages for time that he had worked. *Id.* However, Nahas did not address compensation for overtime hours when he complained to the Board. *Id.* Nahas contends that he worked an average of five or six days per week and eight or nine hours per day throughout his time at Artisan Alley. *Id.* at 177:1–15. Artisan Alley reported that Nahas worked an average of forty-five hours per week. *Id.* at 166:19–23. In his complaint against Artisan Alley for back wages, Nahas pointed to the terms of the employment agreement that he believes governed his work and terms surrounding his employment, including his compensation. *Id.* at 197:9–201:11; Filing No. 1-3 at 7–10. The parties dispute whether the November 2017 agreement is the current agreement governing Nahas's employment or if there have been modifications (Filing No. 79 at 3).

There were roughly five Board meetings at which the Board decided to delay payments to Nahas (Filing No. 70-3 51:7–23, 55:13–57:10, 77:13–78:20). Robinson stated that these decisions were deferrals to allow for time to figure out the company's financial position and ability to make these payments to Nahas. *Id.* at 55:13–18. In the fall of 2022, and despite Board instructions to wait, Nahas began paying himself additional money (Filing No. 73-4 at 21:16–24:16).

In 2022, the Board began to engage in more hands-on control over Artisan Alley and Nahas (Filing No. 73-5 at 66:20–24). In 2022, the Board voted to removed Nahas's financial authority (Filing No. 70-4 at 61:18–63:8). In February 2023 the Board placed Nahas on paid administrative suspension, but Nahas refused to accept it (Filing No. 73-1 at 207:22–24, 215:11–13). The Board eventually terminated Nahas in August 2023 (Filing No. 70-2 at 95:2–97:10). At least one of the

Individual Defendants participated in each of these votes, and all participated in the vote to suspend Nahas. *Id.* at 95:2–97:10; (Filing No. 70-4 at 61:18–63:8).

### B. Procedural Background

In August 2023, Nahas initiated this action in Monroe Circuit Court, alleging Count 1: Breach of Contract against Artisan Alley; Count 2: Violation of the Indiana Wage Payment and/or Wage Claims Statute against Artisan Alley; and Count 3: Violations of the FLSA against Artisan Alley and the Individual Defendants (Filing No. 1-3 at 1). Defendants then removed this case to federal court (Filing No. 1).

On August 14, 2024, Artisan Alley filed Chapter 7 bankruptcy (Filing No. 36). During bankruptcy, this Court stayed all proceedings as to Artisan Alley only (Filing No. 37). In December 2025, Artisan Alley completed its Chapter 7 bankruptcy liquidation and was determined to be a "no-asset" entity for the benefit of unsecured creditors, and Artisan Alley's bankruptcy case was formally closed (Filing No. 51). The stay was lifted on January 8, 2026 (Filing No. 52).

On June 4, 2026, the Court granted Artisan Alley's counsel leave to withdraw their appearance (Filing No. 65). On July 24, 2026, Nahas filed a Motion for Default Judgment against Artisan Alley for failing to defend, as it was a corporation without counsel (Filing No. 67). The Court granted in part Nahas's Motion for Default Judgment and ordered the Clerk to enter a Clerk's default against Artisan Alley (Filing No. 87; Filing No. 88). Nahas's request for default judgment was held in abeyance (Filing No. 87).

Before the Court is Nahas's motion for summary judgment on Count 3: Violations of the FLSA against Artisan Alley and the Individual Defendants (Filing No. 68) and the Individual Defendants' cross-motion for summary judgment on Count 3 (Filing No. 71). The cross-motions

have been fully briefed by Nahas and the Individual Defendants. Artisan Alley is in default and did not respond to either motion. The cross-motions are ripe for the Court's review.

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584. "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation, but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation

marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III. DISCUSSION

Nahas seeks summary judgment against all Defendants on Count 3: FLSA violations. He argues the Individual Defendants controlled the employment agreement that he had with Artisan Alley, that the Board directly supervised him, knew his hours, could change his duties, pay, and employment status, and thus violated the FLSA by not paying him overtime. He argues there is no genuine dispute that he is entitled to summary judgment and $10,248.45 in unpaid overtime wages and liquidated damages (Filing No. 69).

In their Motion for Summary Judgment, the Individual Defendants assert that Nahas is not covered under the FLSA. First, they argue Nahas did not have individual coverage under the FLSA because his work running a small arts nonprofit in Bloomington was quintessentially local (Filing

No. 72 at 3). They contend that Nahas's "incidental use of online payment platforms, [and] . . . isolated out-of-state artwork shipments . . . fall far short of the regular and recurrent interstate activity that individual coverage demands." *Id.* Second, they argue that even if the FLSA applied, none of the Individual Defendants was Nahas's "employer" under the economic realities test, and since they are not employers, they are not individually liable under the FLSA.

The Court will first decide the issue of FLSA coverage because it is dispositive.

## A. <u>FLSA Coverage</u>

The FLSA's protections do not reach every workplace. Rather, the FLSA's minimum wage and overtime protections apply to any employee "who in any workweek is engaged in commerce or in the production of goods for commerce" (individual coverage), or "is employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a)(1); *Amos v. Classic Dining Grp., LLC*, No. 19-cv-03193, 2021 WL 9455301, at *2 (S.D. Ind. Sep. 22, 2021); *Mays v. Rubiano, Inc.*, 560 F. Supp. 3d 1230, 1235 (N.D. Ind. 2021). In his response, Nahas concedes that he is not entitled to enterprise coverage (Filing No. 82 at 6), so the Court only needs to determine whether he is entitled to individual coverage.

The Individual Defendants argue that Nahas's FLSA claims should be dismissed because he is not entitled to individual coverage under the FLSA's wage provisions (Filing No. 72 at 13). The test for individual coverage "is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). "The FLSA applies to those who are *engaged* in commerce; it is not enough to show that the employee's activities *affected* commerce." *Shoemaker v. Lake Arbutus Pavilion, LLC*, 115 F. Supp. 3d 974, 979 (W.D. Wis. 2015). The employee bears the burden of showing that he is

individually covered. *See Johnson v. Sun & Chang Corp.,* 572 F. Supp. 3d 543, 547 (N.D. Ind. 2021).

Nahas may establish individual coverage by showing that he either was "engaged in commerce" or was engaged "in the production of goods for commerce." *Id.* (quoting 29 U.S.C. § 206(a)). The Individual Defendants argue that Nahas did not produce goods for commerce (Filing No. 72 at 14). Nahas does not refute this argument and relies on proving that he was engaged in commerce (Filing No. 69 at 8–9; Filing No. 82 at 6–9).

The Individual Defendants argue that Nahas did not engage in commerce because (1) he did not work for an instrumentality of interstate commerce or work to improve an existing instrumentality or (2) regularly use instrumentalities of interstate commerce in his work (Filing No. 72 at 16–19). Nahas does not claim to be individually covered under the first rationale, only the second—that he regularly used instrumentalities of interstate commerce in his work (Filing No. 82 at 7).

To determine if a plaintiff was engaged in commerce, courts look at the actions of the employee, not the employer. *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). To prove that he was engaged in commerce, Nahas cites examples of different duties he performed, including "overs[eeing] Artisan Alley's website and social-media outlets, devoting approximately two to eight hours per week to that work from 2020 through 2022 . . . , mail[ing] taxes, artwork, correspondence, and other items across state lines approximately five to ten times per year and [emailing] out-of-state grant writers, vendors, donors, and prospective members" (Filing No. 69 at 9). The website also processed payments through PayPal, CashApp, Venmo, and Stripe. *Id.*

The Individual Defendants do not dispute that Nahas performed this work; instead, they argue that Nahas's work does not reach the threshold for him to qualify for individual coverage. In

order for a person to qualify for individual coverage, the person's use of instrumentalities must be "regular" and "recurrent." *Mays*, 560 F. Supp. 3d at 1237 (quoting 29 C.F.R. § 776.3). Mere legal conclusions and bald assertions will not suffice to show that a person's use of instrumentalities is regular and recurrent. *See Id.* at 1237–38 (finding that plaintiff's claim that she "regularly" texted her clients was a legal conclusion that was not sufficient to withstand summary judgment); *Shoemaker*, 115 F. Supp. 3d at 979–81 (stating that claims that plaintiffs "regularly" used social media, credit cards, and texts would be insufficient "because 'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted'" (quoting *Hadley v. Du Page County*, 715 F.2d 1238, 1243 (7th Cir.1983))).

Nahas argues that the work cited above—such as spending two to eight hours per week overseeing Artisan Alley's social media and website—demonstrates that he regularly used instrumentalities of interstate commerce and therefore was engaged in commerce (Filing No. 69 at 9). He asserts that his work was direct and supported sales of passes, classes, and goods (Filing No. 82 at 3). Additionally, he cites the fact that the website processed payments through PayPal, Cash App, Venmo, and Stripe (Filing No. 69 at 9). Nahas points out that "[t]he internet is an instrumentality of interstate commerce." *Mays*, 560 F. Supp. 3d at 1237.

The Individual Defendants argue that Nahas's work with social media and the website had an inherently local focus and that Nahas has failed to provide sufficient evidence to link his work to out-of-state sales or engagement (Filing No. 89 at 3). They argue that "plaintiffs must still present concrete evidence that the use of the instrumentalities was regular and recurrent." *See Shoemaker*, 115 F. Supp. 3d at 979–81. Failure to show that the use crossed state lines also undermines a claim. *See Id*

The Court agrees with the Individual Defendants that Nahas has not provided sufficient evidence that his use crossed state lines. Failing to provide this information undermines Nahas's claim that his use of the internet qualifies him for individual coverage under the FLSA. *See Johnson*, 572 F. Supp. 3d at 548; *see also Su v. NAB, LLC*, No. 21-cv-00984, 2025 WL 89598, at *16 (D. Nev. Jan. 14, 2025) ("Merely showing that an employee uses an instrumentality that is technically capable of interstate communication falls short of showing that the employee regularly used that instrumentality for interstate communication, or that the employee's activities involving the instrumentality are directly and vitally related to interstate commerce."); *Taffanelli v. Fla. Victory Outreach Ctr., Inc.*, No. 16-cv-1506, 2017 WL 6947720, at *3 (M.D. Fla. Oct. 24, 2017) (denying employee's motion for summary judgment in part because employee did "not provide[] evidence that her social media postings or streams . . . were viewed [outside the state]"); *Nilaj v. MGO Labs, LLC*, No. 23-cv-2671, 2024 WL 3426884, at *3 (M.D. Fla. July 15, 2024) (denying FLSA liability for facts alleged, noting that plaintiff did not specify whether his social media marketing was being provided to non-local customers).

The fact that Artisan Alley's website processed digital payments is not sufficient to sustain Nahas's claim. He argues that recurring processing of credit card payments may indicate that the person was individually covered under the FLSA (Filing No. 69 at 9 (citing *Kim v. Hopfauf*, No. 15-cv-9127, 2017 WL 85441, at *2–3 (N.D. Ill. Jan. 10, 2017))). Although this statement is correct, processing payments alone is not sufficient to establish engagement in commerce, especially when the evidence indicates that the activities were intrastate rather than interstate. *See Johnson*, 572 F. Supp. 3d at 547–48. In any case, the use would still need to be regular and recurrent. *See Kim*, 2017 WL 85441, at *2 (noting that plaintiff processed transactions at least ten times a day); *Johnson*, 572 F. Supp. 3d at 548 (finding that plaintiffs processed approximately fifty payments

per day). The Court does not find that Nahas has produced sufficient evidence to show interstate activity or that the processing of payments was regular and recurrent.

Nahas also argues that he engaged in commerce by emailing out-of-state grant writers, vendors, donors, and prospective members (Filing No. 69 at 9; Filing No. 82 at 3). In his deposition testimony he provides two examples of these out-of-state correspondents, including an individual in Chicago and another in Texas (Filing No. 73-1 at 240:6–19). The Individual Defendants argue that Nahas has failed to provide specific evidence in the record to establish that the interactions constitute regular and recurrent engagement with interstate commerce (Filing No. 89 at 3).

Nahas's claims of interstate emailing are similar to the plaintiffs claim in *Lehman v. Teamsters Retiree Housing of Janesville, Wisconsin, Inc.*, No. 09-cv-288, 2010 WL 1729880 (W.D. Wis. Apr. 27, 2010). In that case, the plaintiff Lehman testified in her deposition that "she spoke with 'quite a few' people from other states, and she specifically remembers prospective tenants from Illinois, Florida and Texas." *Id.* at *4. The *Lehman* court found that Lehman provided no indication that her activities occurred on a regular and recurrent basis. Her testimony amounted only to vague and conclusory statements, rather than the specific concrete facts required. *Id.* at *5. *Id.* The Court finds that Nahas's evidence fails to sufficiently establish that his emailing was regular and recurrent and lacks the specific concrete facts that are required to survive summary judgment.

His argument that his mailings constitute regular and recurrent engagement in commerce fail for similar reasons (Filing No. 69 at 9; Filing No. 82 at 7–8). Nahas testified that approximately five to ten times per year, he mailed different items across state lines, including taxes, artwork, correspondence, and other items (Filing No. 73-1 at 238:5–240:1). He cites examples of two transactions—one item he sent to Chicago and another he took to Louisville—as illustrations of the activities that occurred "maybe 5, 10 times a year." *Id.*; Filing No. 82 at 8. Nahas emphasizes

the distinction between the examples and the total number in order to avoid an alleged mischaracterization by the Individual Defendants (Filing No. 82 at 8).

The Individual Defendants respond that the difference between two and ten is not material and that, either way, "his out-of-state activity was sporadic and de minimis" (Filing No. 89 at 9). They also argue that Nahas has failed to provide the necessary concrete evidence to survive summary judgment (Filing No. 89 at 7). The Court agrees.

Although citing an approximate number of times is more specific than the plaintiff's claim in *Lehman* that she talked to "quite a few people," Nahas still lacks the specific concrete evidence that is required to survive summary judgment. Two examples fail to reach this threshold, just as a similar assertion failed in *Lehman*. Even if Nahas had offered sufficient evidence of each mailed item, mailing items ten times per year does not reach the level of regular and recurrent use, especially given the primarily local nature of his work. *See Lehman,* 2010 WL 1729880, at *4. Accordingly, the Individual Defendants are entitled to summary judgment on Count 3: Violations of the FLSA, and that count is **dismissed** as to the Individual Defendants.

### B. ***Sua Sponte* Ruling Under Rule 56(f)**

For the orderly progression of this action, the Court finds that it is appropriate to *sua sponte* grant summary judgment in favor of Artisan Alley on Count 3: Violations of the FLSA, based on its ruling that Nahas is not covered under the FLSA.

A Clerk's default has been entered against Artisan Alley, it is a no-asset entity, and it is unable to move for summary judgment *pro se*. However, the Court has the authority to grant summary judgment *sua sponte*. Fed. R. Civ. P. 56(f); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come

forward with all of her evidence"). The Seventh Circuit has noted that "'granting summary judgment *sua sponte* warrants special caution' and generally requires that the party against whom summary judgment is entered have notice and an opportunity to present its evidence." *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009) (quoting *Simpson v. Merchs. Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999)).

Both Nahas and the Individual Defendants have moved for summary judgment with regard to the FLSA claims and the issue of FLSA coverage specifically, asserting that there is no genuine dispute of material fact for this issue (Filing No. 69 at 8–9; Filing No. 72 at 12, 19). Thus, Nahas had notice that the Court is considering entering summary judgment. *Cf. Goldstein v. Fid. Guar. Ins. Underwriters*, 86 F.3d 749, 751–752 (7th Cir. 1996) (finding that the plaintiff was on notice that summary judgment was being considered after he filed for summary judgment and claimed there was no genuine issue of material fact).

By moving for summary judgment and opposing the Individual Defendants' cross motion for summary judgment, Nahas had an opportunity to present evidence related to the issue of FLSA coverage, as well as providing briefs in support of his arguments for FLSA coverage and in opposition to the Individual Defendants' arguments against FLSA coverage. Nahas's claim of FLSA coverage against the Individual Defendants is the same claim with respect to Artisan Alley. The Court has determined that Nahas is not covered under the FLSA for his work at Artisan Alley, and as such, neither Artisan Alley nor the Individual Defendants are liable under the FLSA. Accordingly, summary judgment in favor of Artisan Alley is appropriate on Count 3: Violations of the FLSA, and that count is **dismissed** as to Artisan Alley.

Because Count 3: Violations of the FLSA is dismissed for lack of coverage, the Court need not, discuss the parties' remaining arguments in their respective Motions for Summary Judgment.

**C. Supplemental Jurisdiction**

With the federal claims having been dismissed, the Court must determine whether it should accept supplemental jurisdiction over the remaining state law claims. The Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." Groce v. Eli Lilly, 193 F.3d 496, 501 (7th Cir. 1999); see Al's Serv. Ctr. v. BP Prods. N. Am., Inc., 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)).

Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." Davis v. Cook Cnty., 534 F.3d 650, 654 (7th Cir. 2008) (quoting Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

Here, the statute of limitations has not run on these claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). See 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; see also Hemenway v. Peabody Coal Co., 159 F.3d 255, 266 (7th Cir. 1998). Substantial judicial resources have not been expended. Although the case has been before the Court since September 13, 2023, the case was stayed for a substantial portion of that time, due to Artisan Alley's bankruptcy proceedings. Also, it is not absolutely clear how the state law claims will be decided. The Court determines the state law claims should be decided in state court. Accordingly, state law claims in Count 1: Breach of Contract against Artisan Alley and Count 2: Violation of the Indiana Wage

Payment and/or Wage Claims Statute against Artisan Alley are dismissed without prejudice, and Nahas may pursue them in state court if he so desires.

**D. Nahas's Motion for Default Judgment**

Per the Court's Order Granting in Part Motion for Default Judgment (Filing No. 87), Nahas's Motion for Default Judgment (Filing No. 67) is currently being held in abeyance as to liability on the claims against Artisan Alley. Because the Court has resolved Nahas's FLSA claims on summary judgment and relinquishes supplemental jurisdiction over Nahas's remaining state law claims against Artisan Alley, Nahas's request for default judgment is **denied as moot.**

## IV. CONCLUSION

For the reasons discussed above, the Individual Defendants' Motion for Summary Judgment as to Count 3: Violations of the FLSA (Filing No. 71) is **GRANTED**, and Nahas's Motion for Summary Judgment (Filing No. 68) is **DENIED**. Further, the Court *sua sponte* **GRANTS** summary judgment in favor of Artisan Alley on Count 3: Violations of the FLSA. Count 3: Violations of the FLSA, of Nahas's Complaint is **DISMISSED**.

The Court **relinquishes supplemental jurisdiction** over the remaining state law claims against Artisan Alley, **DISMISSES** those claims **without prejudice** for lack of subject matter jurisdiction, and accordingly **DENIES as moot** the portion of Nahas's Motion for Default Judgment (Filing No. 67) that was held in abeyance.

Final judgment shall issue under separate entry.

**SO ORDERED.**

Date: September 30, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

ARTISAN ALLEY, LTD.
[Address unknown]

Kathryn M. Cimera
Kathryn Cimera
kcimera@lawmgp.com

Patrick Conner Munson
Mallor Grodner, LLP
pmunson@lawmg.com

Jason R. Ramsland
Ramsland Law LLC
jason@rams.land

Patrick A Ziepolt
Mallor Grodner Plummer LLP
patrick@lawmg.com